**EPSTEIN HEBREW ACADEMY, a Corporation, Appellant,**

v.

*Aloyse W. WONDELL and Blanche Laura Wondell, Respondents.*

No. 47022.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Motion for Rehearing or for Transfer to Court en Banc Denied Oct. 12, 1959.

Ziercher, Tzinberg, Human & Michenfelder, Albert A. Michenfelder, Jr., Clayton, for plaintiff-appellant.

Rader & Love, Clayton, for defendants-respondents.

STOCKARD, Commissioner.

This is a suit for specific performance of a contract to sell land. The trial court denied the relief sought and plaintiff has appealed. The parties will be referred to as in the trial court.

Defendants, Aloyse W. Wondell and Blanche Laura Wondell, are the owners of a tract of land upon which is located their home situated at 1100 North Hanley Road, University City, Missouri. Plaintiff, The Epstein Hebrew Academy, is a charitable corporation organized for the purpose of maintaining private schools for the education of children of the Jewish orthodox faith.

Mr. Frank L. Hoffman, president of the academy, called on Mr. Wondell and advised him that plaintiff wanted to obtain an option to purchase the property where he lived for the purpose of constructing thereon a school building. According to Mr. Wondell, Mr. Hoffman called on him at least ten times, but he always told him that he did not desire to sell the property. Mr. Wondell discussed with his wife the visits of Mr. Hoffman, and they testified that Mrs. Wondell finally suggested that they tell Mr. Hoffman the price would be $50,000 in order "to get rid of him." Mr. Hoffman testified that he was the one who first suggested the price of $50,000, and that he did so after Mr. Wondell "told me that there was around five acres of ground." Mr. Hoffman admitted that he did not tell Mr. Wondell that plaintiff would build a synagogue on the land because "in schools of our type, the synagogue is inferred." However, he later testified that there was no intention to build a synagogue open to the public but only a chapel for use by the students.

There is a dispute in the evidence whether Mr. Hoffman talked to Mrs. Wondell prior to June 13, 1956, but on that evening he returned with a previously prepared form of an option contract. The property was described thereon as 1100 North Hanley Road, and there followed a general description of the boundaries by making reference to the adjoining property on each side. There was no reference to

the acreage. This option contract was signed by defendants on June 13, 1956, and the option was to continue until December 31, 1956. The recited consideration was one dollar which Mr. Hoffman testified was paid.

In July of 1956, Mr. Hoffman, accompanied by Mr. Max Waltuch, again returned to the defendants' home and told them that the acreage had been checked and that "it was lacking an acre," and since "we had figured the acreage being worth around $10,000 an acre, and since there was one acre less, or a little over an acre less, we felt that it would be only right that we should reduce the price $10,000." He further told the defendants that he "thought that was the honest thing to do." Mr. Hoffman stated that he talked to defendants twice about this, but defendants indicated that this was first brought to their attention on July 31, 1956, when Mr. Hoffman and Mr. Waltuch came to their house with a new option contract already prepared. This second option contract was identical to the first except that the purchase price was $40,000 instead of $50,000, and the expiration date was January 31, 1957. The description of the land was identical except that added thereto were the words, "fronting approximately 333 feet on the East side of Hanley by a depth of 470 feet." Defendants stated that they would like to have time to talk to their children about the second option contract, particularly their daughter who lived in the St. Louis area but who was then on vacation. According to Mr. Hoffman he told Mr. Wondell that "evidently he had already talked to his children, he had enough time to talk to them." Mr. Hoffman added that "every visit that I made to the man, he asked for time" to talk to his children. Defendants testified that Mr. Hoffman told them he could not leave the new option contract with them because he was going out of town and Mr. Waltuch "had something to do," and that they were in a hurry because he, Mr. Hoffman, had to go to a funeral home. Defendants' position at the trial was that they signed this second option after much hesitation, and only after Mr. Hoffman told them they would not be sorry for doing so, and after Mr. Waltuch pushed it toward Mrs. Wondell and said "You sign the contract." They also testified that they were caused to believe that it would be dishonest for them not to sign.

Plaintiff made application to University City for a special permit to allow it to erect on the premises a parochial grammar school, but this application was not introduced in evidence. Defendants apparently were caused to believe, whether rightfully or wrongfully, that a synagogue and a parking lot was also to be constructed thereon. Plaintiff's witnesses testified that when the application was pending before the city planning commission, an unidentified person appeared and stated he was an attorney for Mr. Wondell and that Mr. Wondell was opposed to it. There was evidence, and defendants admitted, that Mr. Pelsue, defendants' son-in-law, who was not an attorney, appeared at either a meeting of the planning commission or the city council, it is not clear which, and stated that Mr. Wondell was opposed to the city granting plaintiff's application. The record is unsatisfactory concerning these appearances, and plaintiff presented no evidence concerning the reasons advanced on behalf of Mr. Wondell except a statement of Mr. Hoffman that one reason was that the school would have a synagogue and the neighbors objected to it. However, when asked what her son-in-law said at the meeting, Mrs. Wondell replied, "Well, I don't know if I remember the whole thing, but one thing was this, that after we heard the property was going to have a synagogue and a 200 car parking lot, that is what he [Mr. Pelsue] mentioned in this speech, that we were opposed—we were not opposed to the school, but we were opposed to the synagogue and that big parking space, parking lot."

On January 28, 1957, by vote of the city council, the application of plaintiff was

denied. Defendants offered to show, but upon objection by plaintiff that it was not within the scope of the pleadings they were denied the right to do so, that after the city council voted to deny the application of plaintiff, Mr. Samuel Rich, a director of plaintiff who was engaged in "general real estate construction," rushed forward and said "I will lay it out in a subdivision and build what I want."

Mr. Rich, as agent for plaintiff, on January 29, 1957, the day following the action of the city council, caused a registered letter to be mailed to defendants at 1100 North Hanley Road in which it was stated that plaintiff "does hereby exercise the option to purchase your real property located at 1100 North Hanley in University City and will be ready to close the purchase of said property on Monday the 28th day of February, 1957, in the law office of Herbert W. Ziercher, 15 North Meramec Avenue, Clayton, Missouri." The letter was returned marked "unclaimed." The defendants had gone to Florida in December to visit their daughter and did not return to their home until March.

Subsequent to the submission of this case to the trial court the case was reopened, and it was stipulated that in January, 1958, plaintiff had applied for and received a special permit from the City of Olivette to erect a private parochial Hebrew school on an eight acre tract of land situated on Warson Road north of Olive Street Road. It was further stipulated that if plaintiff's officers were called as witnesses they would testify that plaintiff has no plans to build two schools in the immediate future but that it prefers to erect its school on the property owned by defendants because of its location, and also because it has sanitary sewers immediately available whereas the property located in Olivette does not. While plaintiff stipulated to the above facts, it insisted that they were not relevant because "plaintiff is entitled to specific performance, regardless of the purpose for which the land in question might finally be used."

■ The trial court entered judgment for defendants, and it specifically found that the defendants did not desire to sell the real estate in question; defendants were overreached as a result of undue solicitations by plaintiff's agents; plaintiff can erect the proposed school on an eight acre suitable tract in Olivette; and it is dubious that plaintiff can get the real estate in question rezoned for use as a parochial school. In this suit in equity we consider and weigh all the evidence, make our own findings and reach our own conclusions, but in doing so we take into consideration the trial chancellor's superior position to determine the credibility of the witnesses which appeared before him. Ragan v. Schreffler, Mo.Sup., 306 S.W.2d 494 [1].

■ An option is unilateral, and it does not ripen into a contract of purchase and sale until exercised by the optionee. It is, in effect, but a continuing offer on the part of the optionor to sell the described property under the stated conditions at a specified price, which offer, because of the consideration therefor, the optionor may not withdraw for the designated period. Lusco v. Tavitian, Mo.Sup., 296 S.W.2d 14 [1, 2]; 55 Am.Jur., Vendor and Purchaser, § 28; Annotation, 3 A.L.R. 580.

Defendants do not challenge the second option contract for lack of consideration even though it extended the period for one month and reduced the price by $10,000, it recited the consideration as only one dollar, which was not paid, and it did not contain the usual "and other valuable considerations" phrase which is open for investigation and explanation. See Ragan v. Schreffler, supra, at page 498 of 306 S.W.2d. Therefore, the question on this appeal is whether or not by reason of the purported exercise of the option on January 29, 1957, a valid contract for the sale and purchase of the property came into existence which this court will enforce under its equitable powers by decreeing specific performance thereof.

The second option agreement contained, as did the first, the provision that "This contract is expressly subject to the above described property being rezoned in such a manner that it may be improved and occupied by Epstein Hebrew Academy and used by said Academy for a private parochial school." It is admitted that this condition did not occur.

■ Plaintiff argues that there is not contained any mandatory direction that plaintiff was obliged to use the property for a private parochial Hebrew school, but merely that it "may" do so, and in effect contends that it was entitled to exercise the option without complying with the above quoted condition. Plaintiff has confused the terms under which defendants agreed to sell their property with what would be its rights to use the property after it became the owner. By the terms of the option, defendants offered to sell their property to plaintiff for $40,000 "expressly subject" to it being rezoned for the stated use. That was a condition to the offer to sell, and we need not determine in this case if it was also a condition to the use of the property.

Plaintiff also contends that if the quoted provision in the option was a condition to its exercise of the option, it was a condition of which the benefit "flowed" to it alone, and that it could and did waive it by exercising the option notwithstanding the fact that the application for the special permit had been denied by the city. We cannot agree with this. This provision set forth a set of facts or circumstances which were to occur or come into existence before plaintiff, as optionee, was entitled to accept the offer and cause a contract for the sale and purchase of the property to come into existence, and it was, therefore, a condition precedent. 15 C.J.S. Condition, p. 811; Globe American Corporation v. Miller Hatcheries, Mo. App., 110 S.W.2d 393 [4]. In addition, this condition could not have been for the benefit of the plaintiff. The option agreement was unilateral, and it imposed no duty on plaintiff to have the property rezoned or to buy the property even though it was rezoned. If such a provision had not been inserted in the option agreement, and if plaintiff could not get the property rezoned or for any other reason decided not to buy it, all it had to do was do nothing and no contract of purchase and sale came into existence. Therefore, the presence of the provision in the option agreement added absolutely nothing to the benefit or protection of plaintiff. But, it did benefit defendants and limit the circumstances under which plaintiff could accept the offer, and since it must have been typed into the printed form of option agreement for some purpose, we must necessarily conclude that its purpose was for the benefit of defendants, and that plaintiff alone could not waive it. The failure of plaintiff to have the property rezoned (the granting of the special permit would have had the effect of rezoning) constituted a discharge of its option rights, James, Option Contracts, § 714, and the purported exercise of the option by plaintiff without complying with this condition precedent could not result in a contract for the purchase and sale of the property, unless, as contended by plaintiff, defendants are estopped from asserting noncompliance with the condition precedent.

■ Plaintiff contends that defendants' right to assert that the condition precedent did not occur "was completely nullified by their admitted activities in actively opposing the granting of a special permit." As previously mentioned, the record is unsatisfactory as to what occurred at the meetings of the planning board and city council, and it is only speculative that the city would have granted a permit for the construction of a school but for the objections of defendants, if in fact they did object to a permit for that purpose alone. It is clear that Mr. Pelsue, speaking on behalf of Mr. Wondell, did enter an objection to something concerning plaintiff's application. Mr. Pelsue was not called as a witness although he lived in St. Louis County and his wife was present at the trial and testified. What did plaintiff ask the city for permis-

sion to build? Plaintiff's witnesses said it was for a school, but the application was not introduced in evidence and its contents were not explained, and we have no way of knowing with certainty just what authority was requested. Mrs. Wondell testified that "we were not opposed to the school," and that Mr. Pelsue made, on their behalf only an objection to the granting of a permit for the construction of "the synagogue and that big parking space, parking lot." What Mr. Hoffman testified to does not refute this, and by implication lends some support to it. Plaintiff did not attempt to answer Mrs. Wondell by showing that what she and her husband objected to was not included in the request to the city for a special permit, but if this were true it would have been very easy to establish it by showing the contents of the application. We express no views as to the merits or lack of merits of such an objection on the part of defendants, and while we recognize that defendants had the duty not to interfere with the efforts of plaintiff to comply with the terms of the condition precedent, Mould v. Boehmer Coal Company, Mo.App., 237 S.W. 201, 204, it does not necessarily follow that they were entirely foreclosed from voicing their objections as to other matters.

The power of a court of equity to declare void and of no effect a clearly expressed but unperformed condition precedent in an option contract, like its "most extraordinary power" to set aside a deed (Hamilton v. Steininger, 350 Mo. 698, 168 S.W.2d 59, 67), should be exercised only when justified by what is sometimes termed clear, cogent and convincing evidence. That evidence does not exist in this case, and the burden was upon plaintiff to present it. From the meager factual showing in this case it is reasonable to conclude that defendants did not enter an objection to the planning board or the city council to the granting of a permit only for the purposes set forth in the condition precedent, but that their objection was to the issuance of a permit for uses other and additional to those for which defendants agreed to sell their property. Under these circumstances we cannot affirmatively determine that defendants' opposition to the granting of the special permit was such wrongful conduct on their part that a court of equity should wipe out and declare void and entirely inoperative an unperformed condition precedent of the nature of the one contained in the option agreement in this case.

We conclude that the condition precedent to the right of plaintiff to exercise the option did not come about, and that by its attempt to exercise the option no contract for the purchase and sale of defendants' property came into existence. For that reason the judgment should be and is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.