Arvin GOTTLIEB, Appellant,

v.

Walker LaBRUNERIE and Doris W. LaBrunerie, Respondents.

No. KCD 26561.

Missouri Court of Appeals, Kansas City District.

Sept. 3, 1974.

---

Leonard B. Rose, Sheffrey, Ryder, Skeer, Krigel & Rose, Kansas City, for appellant.

Gerald W. Gorman, Truman K. Eldridge, Jr., Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, for respondents.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

This appeal is from a judgment in an action for declaratory judgment and other relief involving an Option Agreement to purchase real estate. The case was tried below before the court, without a jury, and

resulted in a judgment in favor of the respondents (hereinafter referred to as defendants) and against the appellant (hereinafter referred to as plaintiff). The court below made no findings of fact or conclusions of law.

The first point raised in plaintiff's brief is that the trial court erred in failing to make such findings and conclusions when requested to do so by the plaintiff. A review of the record discloses that the plaintiff's request was in general terms; that the trial court make "findings of fact and conclusions of law concerning the principal controverted fact issues in the cause, all in accordance with V.A.M.R. 73.01.". While we do not approve such a general request since it is completely lacking in the required specificity [1], this request was withdrawn by plaintiff's counsel during the trial and in post trial proceedings. Although presented as the first point in plaintiff's brief, that point of alleged error was again withdrawn and abandoned in oral argument before this court. We, therefore, will not consider this point further.

Rather, this appeal will be considered as a court-tried case decided without findings of fact or conclusions of law and without any indication of the theory upon which the trial court acted in entering the judgment below. Accordingly, all fact issues shall be deemed found in accordance with the result reached and the judgment must be affirmed, if it is correct on any reasonable theory supported by the evidence. Rule 73.01(b); Lossing v. Shull, 351 Mo. 342, 173 S.W.2d 1, 5[1] (1943); Edgar v. Fitzpatrick, 377 S.W.2d 314, 318[12] (Mo. banc 1964); McIntosh v. White, 447 S.W.2d 75, 78[5] (Mo.App. 1969). The judgment will not be set aside unless clearly erroneous. Rule 73.01(d).

Plaintiff's cause of action for declaratory judgment was based upon a written Option Agreement dated January 21, 1972, involving a ten (10) acre tract of land in

---

1. Rule 73.01; In re Kellam's Estate, 227 Mo. App. 291, 53 S.W.2d 401, 403 [2] (1932); State ex rel. O'Brien v. Petry, 397 S.W.2d 1, 5 [3] (Mo.App.1965).

Clay County, Missouri, for a purchase price of $400,000.00. Basically, he claimed that he had fully complied with the terms of this agreement and that the defendants had wrongfully breached the contract. He asked for the court's declaratory judgment that the Option Agreement was in full force and effect; that his notice of April 5, 1972 (hereinafter discussed) had validly extended the option according to its terms; and for other relief.

The pertinent terms of this Option Agreement are as follows:

### "OPTION AGREEMENT

THIS AGREEMENT made the *21st day* of *January, 1972,* by and between *Walker LaBrunerie* and *Doris W. La-Brunerie, 3630 Briarcliff Rd.* of Kansas City, Missouri 64116 hereinafter called *Seller* and *Arvin Gottlieb* or Assigns of Kansas City, Missouri hereinafter called *Purchaser*;

### WITNESSETH, THAT:

In consideration of the sum of *Five Hundred and No/100 dollars ($500.00)* paid by Purchaser to Seller, receipt whereof is hereby acknowledged, Seller does hereby give and grant unto Purchaser, his heirs and assign, for the period of 75 days from the date hereof, *the exclusive right or option* to purchase from said Seller, at the terms hereinafter set forth, the following described real estate: * * *

* * * * * *

SELLER DOES further give and grant unto Purchaser, his heirs and assigns, *the exclusive right or option* to extend the above mentioned option period an additional *6 calendar months,* in consideration of an additional *Five Thousand Dollars ($5,000.00)* paid to Seller. It being understood and agreed that the sum of *($5,000.00)* paid in the event the Purchaser elects to extend this option the said additional 6 months shall be applied toward said purchase price.

* * * * * *

2. In the event that Purchaser elects to exercise either or both of these options, *he shall do so by notifying Seller in writing* of his intention so to do. Such notification shall be deemed sufficient if registered and deposited in the United States Mails *on or before the expiration* of either or both of these options, and addressed to Seller at *3630 North Briarcliff Road, Kansas City, Missouri 64116* * * * Any notification hereunder may be made by registered U. S. Mail, *the effective date of delivery of which shall be the date the same is deposited in said mail.*" (Emphasis added)

The evidence before us shows that this agreement was originally tendered to the defendants by the plaintiff on a printed form. It was then revised and retyped (it is not clear by whom), further changes and additions were made by Walker La-Brunerie and initialed by him. There is no dispute that the revised agreement was executed by the parties on January 21, 1972 and a check dated February 3, 1972, drawn on the account of The David Gottlieb Company, Inc. at the Country Club Bank, signed by Arvin Gottlieb and payable to "Walker LaBrunerie and Doris W. La-Brunerie" was delivered to cover the initial option consideration of $500.00. Walker LaBrunerie testified that he had no recollection of endorsing this check; that an endorsement may have been made by a stamp by an employee; but the fact that it was deposited in the LaBrunerie account is not disputed.

Before relating the events which give rise to this litigation, some pertinent preliminary facts in the record should be noted. Walker LaBrunerie was under the impression that the original option date expired on April 4, 1972, counting 75 days from January 21, 1972. Of course, it is clear that under the provisions of Section 1.040 RSMo 1969, January 21, 1972 was to be excluded in such computation, which would make the option expiration date midnight, April 5, 1972.

Also, there is ample evidence in this record from which the trial court could conclude that the LaBruneries had reached the conclusion before April 5, 1972 that their agreement with the plaintiff was not a good one. The plaintiff testified that Walker LaBrunerie had told him that "the deal was the second worst one he had ever made". LaBrunerie testified that he made this remark in jest and to "make Arvin feel good", and that the LaBruneries were at all times ready to live up to the agreement. He also testified that he called the plaintiff about a week before April 4, 1972 and asked if the plaintiff intended to exercise the second option for a six month extension and that the plaintiff said "he was not sure whether the option would be exercised".

LaBrunerie testified that the plaintiff had indicated that there could be others involved in the deal and that the agreement provided for assignment. However, the following colloquy between the court below and plaintiff appears in the record:

THE COURT: Well, let me understand. Do I understand you to say that you have assigned this contract to someone else?

THE WITNESS: No, sir, we have not. * * *

* * * * * *

THE COURT: But you haven't assigned it yet?

THE WITNESS: No.

THE COURT: Orally or in writing?

THE WITNESS: No, hunh uh, I haven't."

The events of April 4 and 5, 1972, and the days immediately following, appear to have developed as follows:

Although, under the impression that the second option period expired at midnight April 4, 1972, LaBrunerie testified he wait-ed until about 4:00 p.m. on April 5, 1972 and then sent the following telegram to the plaintiff's home and to his office:

"April 5 332 P CDT

You are advised herewith that your option on the ten acre tract at Highways 169 and 152 dated Jan 21, 1972 has expired and is no longer of any force or effect whatsoever.

Walker and Doris LaBrunerie

Mr. Arvin Gottlieb—215 East 18th St. KSC

Arvin Gottlieb—6911 West 51st Place KSC"

He testified that a day or two after April 5, 1972, he told the plaintiff that the option was not timely or properly exercised and was no longer valid and that he had turned the matter over to his attorney.

The plaintiff testified that on April 5, 1972, he was in the state of Iowa on business and that he called his secretary and told her to prepare "the papers and check"; he then called his wife and told her to go down to the office and sign the check. While neither the secretary nor Mrs. Gottlieb testified, and there was no proof that the letter and check were actually mailed, by registered mail, postage and fees prepaid, on April 5, 1972, there was no objection to the introduction of the letter and check into evidence, and we will, therefore, assume that such were mailed on that date.

The letter was written on the business letterhead of "The David Gottlieb Company, Inc.", was dated April 5, 1972, was addressed only to Walker LaBrunerie, and stated:

"Dear Mr. LaBrunerie:

In accordance with the option on the Southeast corner of 169 and 152 Highways, a copy of which (sic) hereto attached (sic) letter will serve as your notice that said option is hereby extended for an additional six (6) calendar

---

months. Enclosed please find our check in the amount of $5,000.00.

Very truly yours,

THE DAVID GOTTLIEB CO., INC.,

/S/ Arvin Gottlieb
    Arvin Gottlieb      SF

AG/sf
Encl."

The enclosed check was drawn on the account of "The David Gottlieb Co., Inc." dated April 5, 1972 and payable to "Walker LaBrunerie and Doris W. LaBrunerie". It was drawn by "The David Gottlieb Company, Inc. /s/ Arvin Gottlieb".

The evidence developed that the purported signature of "Arvin Gottlieb" on this check was in fact signed by Mrs. Gottlieb and that the check would not have been paid by the Country Club Bank until its authenticity had been verified by either Mrs. Gottlieb or the plaintiff. However, although LaBrunerie testified that he had received the letter and check "within a day or two" after April 5, 1972, the check was never presented to the bank for payment.

The plaintiff testified that he returned from Iowa the night of April 5, 1972 and found that the telegram above quoted had been telephoned to his wife by Western Union that evening and that a copy thereof was at his office upon his arrival there the morning of April 6, 1972.

On April 6, 1972, on the letterhead of "The David Gottlieb Company, Inc.", a letter was addressed to Mr. Walker LaBrunerie only, which stated, in pertinent part:

"Dear Walker:

In view of the fact that you have been sent by Registered Mail *our company's notice* of its intentions to extend the option on U.S. Highway 169 and State Route 152 along with *our company's check* in the amount of $5,000.00 as required in said Option Agreement, we consider this option to be in full force and effect and further, that we are not accepting a telegram we received by phone at 10:30 P. M., April 5, 1972 notifying us that the option had expired. * * *

Very truly yours,
THE DAVID GOTTLIEB CO., INC.,

/S/ Arvin Gottlieb
    Arvin Gottlieb      SF

AG/sf
Encl." (Emphasis supplied)

On both the notice letter of April 5, 1972 and the above letter of April 6, 1972, the name of Arvin Gottlieb was signed by "S. F.", a secretary employed by The David Gottlieb Co., Inc.

Before deciding this appeal upon the foregoing facts, we are guided by certain basic legal principles applicable to this matter.

■ Relief by declaratory judgment is *sui generis* and, while neither strictly legal nor equitable, its historical affinity is equitable and such actions are governed by equitable principles. Mutual Drug Co. v. Sewall, 353 Mo. 375, 182 S.W.2d 575, 576[1] (1944); McDown v. Wilson, 426 S.W.2d 112, 117[2] (Mo.App.1968); Gurniak v. Liszewski, 411 S.W.2d 84, 86[4] (Mo. 1967).

■ Options to purchase "are not in favor in courts of equity", Chapman v. Breeze, 355 Mo. 873, 198 S.W.2d 717, 719[6] (1947), and are to be strictly construed as against the person whose right it is to exercise the option, Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739, 746[10] (1948).

■■ Options to purchase are unilateral and grant to the optionee a right of election to purchase or not, as he sees fit. The optionor may not withdraw the offer to sell during the designated period. Epstein Hebrew Academy v. Wondell, 327 S. W.2d 926, 929[2] (Mo.1959); Keith v.

Tucker, 483 S.W.2d 430, 435[5, 6] (Mo. App.1972). But an optionee must exercise this privilege or option in strict accordance with expressly stated terms and conditions.

■ It is clear that under the above-stated principles and the express terms of the Option Agreement here involved, as above quoted, the letter of April 5, 1972 purportedly giving notice of the exercise of the option to extend the agreement for a period of 6 calendar months, was *timely* made, and the defendants' telegram purportedly notifying plaintiff that the option had expired, was premature. But did the letter notice of April 5, 1972 otherwise comply with the terms of the Agreement consistent with the evidence? We hold that it did not.

■ In the first place, the agreement was between the plaintiff and "Walker LaBrunerie *and* Doris W. LaBrunerie", and the alleged notice was addressed to only Walker. But the plaintiff seeks to avoid this deficiency in the notice by asserting the general rule that notice to one of the several *joint owners* is binding upon all such joint owners, although such rule is not applicable to owners in common. Except for the testimony of Walker LaBrunerie that Doris was his wife, the record is devoid of any evidence as to how the title or ownership of the land in question was actually held. Under these circumstances, the general rule relied upon by plaintiff is not applicable.

■ But the plaintiff also asserts: "Furthermore, there can be no question that Walker LaBrunerie was acting as agent for his wife, Doris LaBrunerie, in this transaction." To bolster this broad statement, plaintiff takes equal liberty with the record by stating that Walker "handled all the negotiations" and he, alone "participated in the preparation of the Option Agreement" and there was no evidence "that Doris LaBrunerie did anything more than merely sign the Option Agreement." These facts alone would not establish the claimed agency relationship, even if supported by the record. However, neither the plaintiff nor Walker LaBrunerie testified as to what activity, function or part, if any, Doris played in the transaction and we cannot assume that she was a mere bystander. On the contrary, it is well settled law that mere relationship or family ties, unaccompanied by proof of other facts or circumstances, will not justify the inference of agency. 2A C.J.S. Agency § 53, p. 629; Rimer v. Hubert, 439 S.W.2d 5, 7[2] (Mo.App.1969); Dinger v. Burnham, 360 Mo. 465, 228 S.W.2d 696, 698[1] (1950).

This evidentiary deficiency on this record was obviously recognized by plaintiff because in one of his post-judgment motions, he asked for an opportunity to reopen the case in order to offer evidence that "Walker LaBrunerie was at all times acting as agent for and on behalf of Doris LaBrunerie, his wife.". We, therefore, hold that there was no proof nor permissible inference of an agency relationship and the April 5, 1972 notice of exercise of the option should have been given also to Doris LaBrunerie.

■ While the optionee named in the Agreement was "Arvin Gottlieb or Assigns", it is undisputed that no actual assignment had been made by the plaintiff. He unequivocally so testified on November 2, 1972 at the trial of the case in response to questions propounded by the court, as above quoted. Yet the purported notice of April 5, 1972 came upon the letterhead of and was signed by "The David Gottlieb Co., Inc.", a complete stranger to the Agreement—neither a named optionee nor purported assignee. Furthermore, on April 6, 1972, the communication above quoted was again upon the letterhead of and signed by such company, and the body of the letter refers to "our company's notice".

We, therefore, hold that under the rules of strict construction applicable herein, the clearly expressed and stated conditions of the Option Agreement and the exhibits and testimony in the trial, the trial court's

judgment is based upon a reasonable theory supported by the evidence, that the purported notice of April 5, 1972 to extend the option was insufficient and ineffective, and such judgment was not clearly erroneous.

We have carefully read the authorities cited by plaintiff on this point, and we do not find them persuasive toward any other conclusion.

Having concluded as we do, that the trial court's judgment must be affirmed on this point, it is unnecessary and would unduly extend this opinion to rule the other points of error raised by the plaintiff, which, by speculation, might have formed a basis for such judgment. These points deal with the authenticity and collectibility of the check tendered with the purported notice of April 5, 1972. Whatever we ruled on these points would not change the result.

The judgment is accordingly affirmed.

All concur.