**BOATMEN'S BANK OF MID-MISSOURI, Appellant,**

v.

**CROSSROADS WEST SHOPPING CENTER, LTD., Respondent.**

**No. WD 50693.**

Missouri Court of Appeals, Western District.

Oct. 10, 1995.

---

David Slavkin, Lisa Demet Martin, St. Louis, for appellant.

Hamp Ford, Susan Ford Robertson, Columbia, for respondent.

Before BERRY, P.J., and ULRICH and ELLIS, JJ.

ULRICH, Judge.

Boatmen's Bank of Mid–Missouri (Boatmen's) appeals the findings of the trial court in a declaratory judgment action. Boatmen's filed the action seeking judicial interpretation and declaration of the rights and duties of Boatmen's and Crossroads West Shopping Center, Ltd. (Crossroads) in a lease agreement that purported to provide an option to purchase the leased premises. On appeal Boatmen's asserts that the trial court erred in finding 1) the option to purchase had terminated; 2) the option to purchase by its provisions was not sufficiently definite to support a declaratory judgment; 3) Boatmen's attempt to exercise the option, which Crossroads rejected, was an election of remedies precluding the declaratory judgment action; and 4) the ordinances of the city of Columbia prohibited subdividing the property of which the premises was a part and conveyance of the premises to Boatmen's under the lease. Dispositive is the issue whether prepayment of the Note by Crossroads terminated Boatmen's ability to exercise the option expressed in the lease.

The judgment of the trial court is affirmed.

**802**

The facts of this case are undisputed. The dispute lies in the interpretation of the lease provision entered into by Crossroads and Boatmen's predecessor in interest. Crossroads developed and is the owner of property containing a shopping center at the intersection of West Broadway and Stadium Boulevard in Columbia, Missouri. In 1972 Crossroads entered into a lease and covenants with Citizens Savings Association of Mexico, Missouri (Citizens). As provided in the lease, Citizens loaned Crossroads $400,000 to build a building at the shopping center to be leased to Citizens. A $400,000 promissory note secured by a First Deed of Trust on the premises was executed by Crossroads.

The lease provided for lease payments from Citizens to Crossroads in the amount of $2,861.40 per month for the first five years and $2,661.40 per month thereafter. The lease also contained a provision giving Citizens the option to purchase the premises, and upon such exercise the note would be considered paid in full without penalty. This purchase option provision is the subject of the parties' dispute.

The option to purchase became effective only after Citizens had occupied the building and paid rent for ten years. Citizens could then exercise the option by tendering payment equal to the remaining principal and accrued interest due on the $400,000 loan secured by the First Deed of Trust on the property. An executed Warranty Deed was placed in escrow for delivery to Citizens upon exercise of its option to purchase.

The lease provided that the lessee, Citizens, could assign its rights and interest in the lease without lessor's consent. The lease was assigned to several lessees before Boatmen's acquired the lessee's rights expressed in the lease. In March of 1980 Citizens Savings merged with Community Federal Savings and Loan Association. Community Federal succeeded to all Citizens interest in the lease. In December of 1990, the Resolution Trust Corporation (RTC) was appointed receiver for Community Federal. Boatmen's National Bank of St. Louis purchased from

the RTC certain assets of Community Federal, including the right to accept or reject the lease. In March of 1992, Boatmen's of St. Louis accepted the lease. On May 6, 1992, Boatmen's of St. Louis assigned all interest in the lease to Boatmen's of Mid–America, the present plaintiff. Boatmen's continues to occupy the premises and has made timely rent payments.

On November 4, 1991, while the assets of Community Federal were possessed by the RTC, Crossroads prepaid the full amount of principal and accrued interest outstanding under the note in the amount of $259,190.79. The payment was made to the RTC as receiver for Community Federal. The note and Deed of Trust on the premises were canceled.

On June 19, 1992, Boatmen's attempted to exercise the option to purchase the premises under the terms of the lease by tendering payment of $248,994.78, the amount that would have been due under the note if Crossroads had not prepaid.[1] Crossroads then notified Boatmen's that it would not accept the payment as an exercise of the option and directed the escrow agent to deliver the Warranty Deed back to Crossroads. The declaratory judgment action was filed.

On January 8, 1994, a hearing on the matter was conducted. Most of the evidence in the record is through offers of proof presented by the parties. The trial court entered judgment on December 30, 1994, finding in part that the option to purchase no longer exists by reason of Crossroads' prepayment of the note.

The dispositive issue in this case is whether the prepayment of the Note by Crossroads terminated Boatmen's ability to exercise the purchase option under the lease. When reviewing a court tried case, the trial court's judgment will be sustained unless no substantial evidence supports it, the judgment is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Charles Campbell v. Reorganized School District Number 1, 904*

1. At trial an amortization schedule was admitted into evidence to establish the amount of principle and accrued interest that would have been due on any given date according to the original loan agreement, without regard to prepayment.

S.W.2d 18 (Mo.App.1995); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc.1976).

Options to purchase are not favored in courts of equity. *Gottlieb v. Labrunerie*, 514 S.W.2d 27, 31 (Mo.App.1974). They are strictly construed against the person whose right it is to exercise the option. *Id.; Krall v. Light*, 240 Mo.App. 480, 210 S.W.2d 739, 746 (1948). *Estate of Polete v. Campbell*, 764 S.W.2d 179, 180 (Mo.App.1989). An optionee must exercise his option in strict accordance with the terms and conditions of the agreement. *Estate of Polete* at 180.; *Gottlieb* at 32.

If a condition has made a provision null and void, there is nothing for the court to act upon, and the court will not make a contract for the parties. *Keller v. Reich*, 646 S.W.2d 141, 143 (Mo.App.1983).

The initial parties did not specifically address how prepayment of the note would affect the purchase option provision of the contract. When the parties to a contract have not agreed with respect to a term which is essential to determination of their rights and duties, the term which is reasonable in the circumstances is supplied by the Court. Restatement (Second) of Contracts § 204 (1981). Omission by the parties of provision for this contingency may either have been unforeseen or the parties may have failed to express more clearly their intent should prepayment occur. See comments to § 204 Restatement of Contracts. In either situation terms may be implied where necessary to give business efficacy to the contract. *Camden Iron & Metal, Inc. v. Bomar Resources, Inc.*, 719 F.Supp. 297, 305 (D.N.J.1989).

Where a transaction is composed of more than one document, such as the Note and lease in this case, both instruments should be examined together rather than isolating a single clause from either. *Pontiac Realty Co. v. Transit Casualty Co.*, 260 S.W.2d 329, 332 (Mo.App.1953). Therefore both instruments need to be considered in interpreting the purchase option provision and determining what construction is reasonable under the circumstances.

Boatmen's argues that the purchase option clause allows it to pay the amount that would have been due under an amortization schedule, as if the note had not been paid. In this case the lease expressly provided for exercise of the option by paying the amount due on the Note. The terms "amount due" or "outstanding" imply the obligation is still in existence. When interpreting a contract, the court presumes words used are intended to have their ordinary meaning. *Marshall v. Pyramid Development Corp.*, 855 S.W.2d 403, 407 (Mo.App. 1993). The Note contained a clause that allowed for prepayment without penalty. This Note was furnished by the bank that was also the lessee of the premises. The bank could have protected itself by inserting a clause prohibiting prepayment instead of allowing prepayment without penalty if the intent of the contracting parties was to provide lessee an option to purchase for the entire life of the lease.

The initial contracting parties did not expressly state the effects of prepayment. Considering the language used in both instruments and attempting to give business efficacy to the provision, impliedly a condition to exercising the option was the existence of a balance due on the note. Legally, the Note is nonexistent if no sum is owed. A condition subsequent, by its terms, provides for cancellation of rights or obligations upon the happening or non-occurrence of an event or condition. *See Reed Stenhouse, Inc. of Missouri v. Portnoy*, 642 S.W.2d 947, 952–953 (Mo.App.1982). The prepayment of the note by Crossroads operated as a condition subsequent eliminating Boatmen's ability to exercise the option to purchase the premises.

The judgment of the trial court is affirmed.

All concur.