MFA INCORPORATED, Appellant,

v.

W.L. POINTER, et al., Respondents.

No. WD 47229.

Missouri Court of Appeals,
Western District.

Nov. 9, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

J. Brian Griffith, Columbia, for appellant.

Albert H. Chamberlin, Kansas City, for respondents.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

The plaintiff, MFA, Inc. (MFA), appeals from a judgment entered in favor of the defendant, Investors Land Co. (Investors), by the Circuit Court of Lafayette County, Missouri. MFA had asserted an action alleging that Investors had converted collateral which properly belonged to MFA by keeping the proceeds from the sale of crops in excess of what they were entitled to keep.

On February 12, 1988, I.R. Kirk Farm, Inc. (Kirk Farm) leased approximately thirteen hundred acres of farm property in Platte County, Missouri, from Investors for a term of two years. The rent under the lease was to be $110,440 per year. In the lease, Investors reserved a landlord's lien on the crops raised on the land to secure payment of the rent. The Investors expanded the lien contractually to cover the entire lease term of two years. Also in the lease, Investors agreed to subordinate its lien over three hundred fifty acres of crops which may be given by Kirk Farm to any lender for the purpose of securing a loan for the operation of the farm. On April 8, 1988, Investors filed a financing statement with the Platte County Recorder of Deeds. Then, on May 6, 1988, Investors filed a memorandum of lease also with the Recorder of Deeds.

MFA is a supplier of seed, fertilizer and crop materials. In 1988 and 1989, MFA advanced credit to Kirk Farm for farming operations. In return, Kirk Farm executed three promissory notes in favor of MFA. The first promissory note was executed on March 14, 1988, in the amount of $35,000. The parties to the note also signed a security agreement on that date which indicated that MFA was taking a security interest in "[a]ll crops now owned and hereafter acquired but not limited to the following: 1st. on 350 ac Beans." A financing statement was filed on March 28, 1988, which purported to indicate that MFA was given priority by Kirk Farm on three hundred fifty acres of beans in accordance with the lease.

The second promissory note was executed on May 5, 1989, in the amount of $35,000. A second security agreement was signed on that date and a corresponding financing statement was filed on May 12, 1989. Both documents stated that MFA was taking a security interest in "[a]ll crops now owned and hereafter acquired." The third promissory note was executed on July 19, 1989, in the amount of $40,000. No security agreement or financing statement was filed with respect to this loan.

In 1988, Kirk Farm operated the farm, raising various crops including corn, wheat, and soybeans. The crops were eventually harvested and sold at the Atchison County Co-op in Atchison, Kansas. Some checks were issued jointly to Investors and Kirk Farm, and others were issued jointly to MFA and Kirk Farm. The crops harvested included eleven hundred acres of soybeans. The sale of these beans yielded approximately $94,000 of which MFA received $9,308.39 and Investors received the remainder.

In 1989, a crop of wheat was harvested and sold. The sale yielded $35,948.85. Investors collected $20,000 of that sum and the remainder was distributed to Kirk Farm. In July of that year, Kirk Farm defaulted on the lease and Investors took possession of the premises and harvested and sold the crops. The sale of the soybean and corn crops to the Atchison County Co-op yielded $152,969.31. Out of the proceeds, Investors paid harvesting expenses of approximately $55,000 and retained the rest for payment of rent past due and advances previously made by Investors to Kirk Farm. Investors then notified Atchison County Co-op that they had no further interest in any crops being brought off the land. At that time, there were approximately five hundred acres of soybeans which remained in the fields.

MFA in its first amended petition claims that Investors converted proceeds from both the 1988 and 1989 crop sales. From the 1988 harvest, MFA claims entitlement to the proceeds from the sale of three hundred fifty acres of soybeans. Concerning 1989, MFA argues that of the total yield of $188,918.16, Investors was only entitled to $110,440 and converted the rest. MFA brought an action

against Investors to collect the amounts which were allegedly converted. The case was tried to the court and on November 9, 1992, the court entered judgment in favor of Investors. MFA appealed this judgment.

■ MFA argues on appeal that the trial court erred in entering judgment for Investors because Investors converted collateral which belonged to MFA. Since this is a court-tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Id.* at 32. In applying this standard, this court has stated: "[W]e give the prevailing party the benefit of all favorable evidence and reasonable inferences to be drawn therefrom, disregarding all evidence to the contrary." *Lisec v. Coy*, 793 S.W.2d 173, 175–76 (Mo. App.1990) (*quoting In re Marriage of West*, 689 S.W.2d 814, 815 (Mo.App.1985)). Because the trial court made no findings of fact or conclusions of law, all facts are considered on appeal as having been found in accordance with the result reached, and we will affirm the trial court's judgment if it is correct on any reasonable theory supported by the evidence. *Safeco Ins. Co. of America v. Stone & Sons, Inc.*, 822 S.W.2d 565, 567 (Mo.App. 1992).

■ MFA's sole point on appeal is divided into two sub-points. In the first sub-point, MFA claims that they have a cause of action for conversion in that they had a valid perfected security interest in three hundred fifty acres of soybeans. In 1988, Investors sold the soybeans and retained the proceeds. Conversion is defined as the wrongful exercise of dominion or ownership over a chattel. *Ensminger v. Burton*, 805 S.W.2d 207, 210–11 (Mo.App.1991). In the context of secured transactions, a cause of action for conversion will not lie until the party seeking to impose liability has the right to immediate possession of the collateral. *Id.* at 211–12.

■ Our first step, therefore, is to determine whether MFA had a valid security interest in the 1988 soybeans. According to the Uniform Commercial Code, § 400.9–203(1), RSMo Supp.1989, a security interest is enforceable against the debtor and third parties when:

(a) ... the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

It is not contested that Kirk Farm signed a security agreement in 1988 for which a financing statement was duly filed. Investors also concedes that MFA gave value in exchange for the security interest and that Kirk Farm had rights in the soybeans. However, Investors argues that MFA has not proven that it had a valid security interest in the soybeans because the 1988 security agreement failed to adequately identify the land on which the crops were to be grown pursuant to § 400.9–203(1)(a), RSMo Supp. 1989.

■ We must determine how definite the description of the land should be. Section 400.9–110, RSMo 1986 states that "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." A legal description of the real estate is not necessary, but the description must be specific enough to enable a third party, aided by reasonable inquiries which the security agreement itself suggests, to identify the property. *Centerre Bank Nat'l Ass'n v. Missouri Farmers Ass'n, Inc.*, 716 S.W.2d 336, 339 (Mo.App.1986).

Plaintiff's Exhibit 6–A is the security agreement which was signed on March 14, 1988. Contained in that document is the following description of the concerned property:

| Record Owner of Real Estate | Acres | County and State | Distance and Direction from town |
|---|---|---|---|
| Investors Land Co. | 1392 | Platte, Mo | 1 S. of Weston |
| 11004 East 40 Hwy | | | |
| Suite 149 | | | |
| Independence, MO 64055 | | | |

The security agreement does not attempt to describe the three hundred fifty acres in which MFA purported to take a first priority security interest. The above description may be sufficiently detailed to identify the land if the security interest was in all the crops to be grown by Kirk Farm. See, e.g., In re Pulley, 75 B.R. 168, 169 (Bankr.W.D.Mo. 1987). However, a reading of the security interest does not reveal upon what land the three hundred fifty acres of beans are to be grown, or how the proceeds are to be divided between MFA and Investors.

Before the passage of the UCC, the law of Missouri stated:

> Where an effort is made to identify the property described in a chattel mortgage[1] and it is found that there is more of the particular property than the mortgage calls for, the mortgage is void because there is no way of telling what part of the property was intended to be covered in the mortgage . . . .

Kibble v. Ragland, 263 S.W. 507, 510 (Mo. App.1924); see also Klebba v. Missouri Meerschaum Co., 257 S.W. 174, 175 (Mo.App. 1923) (holding that where chattel mortgage on 75 acres of corn to be grown, and 100 acres actually planted, chattel mortgage void because no way to determine to which 75 acres the mortgage attaches.)

Acknowledging these decisions were handed down long before the UCC was enacted, we may rely on them in deciding whether a land description reasonably identifies what is described. See Piggott State Bank v. Pollard Gin Co., 243 Ark. 159, 419 S.W.2d 120, 121 (1967). The security agreement described the entire farm, but did not elaborate with respect to the three hundred fifty acres of soybeans. Without greater specificity, it cannot be said that MFA's description was definite enough to enable a third party, aided by reasonable inquiries, to identify the three hundred fifty acres out of the total acreage of the farm upon which the soybeans were to be grown. Therefore, MFA does not have a valid security interest in the three hundred fifty acres of soybeans. Since MFA did not have any interest in the three hundred fifty acres of soybeans, it does not have a cause of action for conversion of the proceeds from the sale of the crops. The absence of specificity is a fact issue upon which the trial court could have legitimately based its decision. See Safeco, 822 S.W.2d at 567. Therefore, the trial court properly entered judgment in favor of Investors as to the proceeds of the 1988 soybean crop.

■ In the second sub-point, MFA argues that the trial court erred in entering judgment in favor of Investors for the years 1988 and 1989 because MFA had a prior perfected security interest for all crop proceeds in excess of the rent due for each year. MFA seeks the excess proceeds for 1989 only. We need not determine whether MFA's security interest was properly and timely perfected as argued by the parties because we hold that Investors was not liable for conversion in the year of 1989. The evidence shows that Investors did not retain any proceeds in excess of the $110,440 rent due and advances previously made by them to Kirk Farm.

MFA concedes that Investors was entitled to retain enough of the proceeds to satisfy Kirk Farm's rent obligation and to repay Investors for advances made to Kirk Farm. MFA argues, however, that Investors is liable for the conversion of about $55,000 which was used to pay harvesting costs. Since Investors did not advance the harvesting

---

1. "Chattel mortgage" was the pre-UCC terminology for a security interest in personal property.

costs, MFA claims the harvesters should not have been paid before MFA. The Uniform Commercial Code, however, contemplates the payment of expenses prior to recovery of proceeds by the secured party. Section 400.9–504(1), RSMo Supp.1989 states that upon the sale of collateral:

The proceeds of disposition shall be applied in the order following to:

(a) the reasonable expenses of retaking, holding, preparing for sale or lease, selling or leasing and the like ...;

(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;

(c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral....

While MFA is correct in arguing that this rule does not apply to landlord's liens, § 400.9–104(b), RSMo Supp.1989, it does apply to any recovery to which MFA is entitled. If MFA had brought an independent action against Kirk Farm for breach of the security agreement and had repossessed the crops for sale, § 400.9–504(1)(a) would mandate that the expenses related to harvesting and selling the crops be paid first. In that situation, MFA would recover nothing because once the rent and expenses were paid, there would be nothing left. MFA now asks us to place them ahead of the harvesters merely because it was Investors rather than MFA which repossessed and sold the crops. MFA should not be put in a better position because they were not the ones that ordered the sale. We hold that MFA was not entitled to any of the proceeds from the sale of the crops until the harvesting costs were satisfied.

There is no evidence that Investors retained any proceeds in excess of that to which they were entitled. Further, the harvesting expenses were properly paid out of the proceeds of the sale. Therefore, the trial court did not err in entering judgment in favor of the defendant, Investors, with respect to the 1989 crops.

Judgment affirmed.