**Alfred JOBE, Personal Representative of the Estate of Leon Jobe, Respondent,**

v.

**Franz ELMER, Appellant.**

**Jim FORCUM, Respondent,**

v.

**Franz ELMER, Appellant.**

Nos. 19247, 19248.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 14, 1994.

Donald G. Cheever, Marshfield, for appellant.

John J. Garrabrant, Mountain Grove, for respondents.

PARRISH, Judge.

Franz Elmer (defendant) appeals from judgments against him in favor of Alfred Jobe, personal representative of the Estate of Leon Jobe (No. 19247), and in favor of Jim Forcum (No. 19248). Jim Forcum sought damages for personal injuries he sustained while employed by defendant. Alfred Jobe sought damages for personal injuries Leon Jobe (now deceased) sustained while employed by defendant. The cases were consolidated for trial.

This court has consolidated the appeals. The petitions alleged that injuries for which recovery was sought were caused by defendant's negligence—his failure to provide a safe work place, safe instrumentalities for use by employees and proper training for employees. This court affirms.

The trial court heard the cases without a jury. Review is in accordance with Rule 73.01(c). It is limited to determining whether each judgment is supported by substantial evidence; whether it is against the weight of the evidence or whether it is the result of erroneous declaration or application of law.

*Smoot v. Hyde,* 855 S.W.2d 399, 401–02 (Mo. App.1993). This court gives the respective plaintiffs, as prevailing parties, the benefit of all favorable evidence and reasonable inferences that may be drawn therefrom. *MFA, Inc. v. Pointer,* 869 S.W.2d 109, 111 (Mo.App. 1993). Evidence to the contrary is disregarded. *Id.*

Leon Jobe and Jim Forcum sustained partial amputations of their right thumbs shortly after they began working for defendant at his machine shop. The injuries occurred on different dates; however, they were caused by the same machine—an 18-ton punch press. Both injuries occurred when the employee reached into the point of operation of the machine to remove a punched piece of metal.

Defendant operates Elmco Engineering (Elmco), a machine shop in Hartville, Missouri. Elmco produces manufactured parts utilizing milling machines, grinders, lathes, a drill press and punch presses. Defendant maintains the machines and trains the employees.

Jim Forcum began work at Elmco the morning of August 17, 1989. He was 17 or 18 years old. He had not previously worked at a machine shop. Defendant trained Jim in the operation of the punch press and assigned him that job. Defendant instructed Jim to place a thin strip of metal between the machine's dies, using his index fingers only. He was to remove his hands from the point of operation, then step on a foot pedal and wait for the machine to cycle and cut the piece of metal. He was to remove the cut piece of metal with his index fingers.

Jim worked all morning taking one 15–minute break. On two occasions, the machine cycled twice when he stepped on the foot pedal. After the second occurrence, he told defendant about the machine's malfunction. Defendant told him to be careful and sprayed WD–40 on the machine's flywheel. Around noon he took a 30–minute break for lunch. About 15 or 30 minutes after Jim returned to work, as he was reaching to remove a punched piece of metal, the punch press malfunctioned again. It cycled, crushing and amputating approximately half of the distal phalange of his right thumb.

After Jim Forcum's injury, defendant designed and installed a pair of scissor type handles on the punch press. They were intended to prevent the operator from depressing the foot pedal unless both the operator's hands were on the handles away from the machine's point of operation.

Defendant called Alfred Jobe and asked if Mr. Jobe's 15–year–old son, Leon, could go to work for Elmco—Leon had previously inquired about a job at Elmco. Mr. Jobe brought Leon to Elmco the morning of August 18, 1989. Defendant trained Leon to operate the same machine that injured Jim Forcum.

Leon worked the morning of August 18. He took a 30–minute break for lunch and returned to work. About 2:00 p.m. when Leon reached to remove a punched piece of metal, the machine cycled, crushing and amputating approximately half of the distal phalange of his right thumb.

After Leon's petition was filed in No. 19247, but before trial, he was killed in an automobile accident. His father, as personal representative of Leon's estate, was substituted as plaintiff.

Interrogatories defendant had submitted to Leon and Leon's answers were admitted in evidence. Interrogatories 5 and 8 and the answers to those interrogatories state:

5. Prior to your injury did the machine ever malfunction? If so describe in detail how the machine malfunctioned and state whether or not you reported the malfunction to Mr. Elmer.

Answer: Yes, Pushed [sic] trip lever and machine cycled three or four times, reported malfunction to Mr. Elmer who sprayed bearings with WD–40.

.     .     .     .     .

8. At the time you were injured state whether or not your foot was in contact with the control pedal. If it was not please state where your feet were located at the time of your injury?

Answer: My feet were on the floor, not on the pedal.

Virgil J. Flanigan, Ph.D., testified as an expert witness on behalf of plaintiffs. Dr. Flanigan is a professor of mechanical engineering at the University of Missouri at Rolla. Dr. Flanigan's experience includes teaching a machine design class which deals with safety features of machines. The class addresses looking for hazards, identifying hazards and how "to design it out of the machine, guard the machine."

Dr. Flanigan was asked if, in his opinion, the machine which injured Jim Forcum and Leon Jobe was unreasonably dangerous. He answered, "Yes." He was asked if it was a safe machine. He answered, "No." Dr. Flanigan also testified that there were safety devices that could be added to the machine to make it safe and described devices that were available to accomplish that purpose.

Defendant's first point on appeal states, "The trial court erred in consolidating the two cases which are before the court on this appeal." Respondents correctly assert that the point fails to comply with Rule 84.04(d) because it does not state "wherein and why" the ruling of the trial court was erroneous.

Rule 84.04(d) requires points relied on to state what actions or rulings of the trial court are sought to be reviewed and wherein and why those rulings are erroneous. *In Interest of J.L.C.*, 844 S.W.2d 123, 125–26 (Mo.App.1992).

Point I does not state the basis for defendant's contention that the trial court erred in consolidating the cases for trial. It does not state "why" the action complained about was erroneous or "wherein" the record on appeal supports defendant's claim of error. It preserves nothing for review. *Bentlage v. Springgate*, 793 S.W.2d 228, 231 (Mo.App. 1990); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988). Point I is denied.

In Point II defendant contends the trial court's judgments were against the weight of the evidence. He contends the evidence was not sufficient to support findings that defendant failed to provide a reasonably safe work place and failed to provide reasonably safe equipment.

Both actions seek recovery based on defendant's negligence. To establish negligence on the part of an employer, "it must be shown that the employer has breached some duty which he owed the employee." *Hightower v. Edwards*, 445 S.W.2d 273, 275 (Mo. banc 1969). The duties owed by an employer to an employee include providing a reasonably safe place of work, providing suitable instrumentalities with which to work and seeing that the instrumentalities are safely used. *Hannah v. Mallinckrodt, Inc.*, 633 S.W.2d 723, 724 (Mo. banc 1982).

The instrumentality used by the two injured employees was the punch press. The trial court heard evidence concerning the nature of the machine and the manner in which it was used. Dr. Flanigan testified that the machine was unsafe. The trial court determined that the machine was a dangerous instrumentality; that its manner of use, as prescribed by defendant, was unsafe.

Before this court can conclude that a judgment in a court-tried case is against the weight of the evidence, it must entertain a firm belief that the judgment was wrong. *Commerce Bank of Poplar Bluff v. Bulger*, 614 S.W.2d 768, 769 (Mo.App.1981). Having reviewed the evidence with deference to the trial court's opportunity to adjudge and assess the credibility of witnesses, this court is not left with a belief either judgment was wrong. Point II is denied. Both judgments are affirmed.

GARRISON, P.J., and PREWITT, J., concur.