**CITY OF ST. PETERS, Missouri, Plaintiff/Appellant,**

v.

**John HILL, et al., Defendants/Respondents.**

No. ED 74423.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 26, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 5, 2000.

Application for Transfer Denied Feb. 22, 2000.

V. Scott Williams, St. Charles, for appellant.

Joel D. Brett, St. Charles, for respondent.

KENT E. KAROHL, Judge.

Plaintiff, City of St. Peters, brought an action against various parties, including defendants, John and Thelma Hill, for unpaid rent under a commercial lease agreement and subsequent assignments of the lease agreement. Defendants filed a counterclaim against plaintiff for conversion of furniture and fixtures. The court entered a judgment of $21,749.80 for plaintiff on the rent claim. It denied any pre-judgment interest. It entered a judgment of $21,749.80 for defendants on their counterclaim for conversion. Plaintiff appeals, arguing the trial court's orders denying its motion for directed verdict and motion for judgment notwithstanding the verdict on the counterclaim should be reversed because: (a) defendants failed to offer evidence to support a finding that they owned or had a right to possess the personal property at the time of the alleged conversion; (b) the property was abandoned and became the property of plaintiff, as lessor, under the lease agreement; and (c) defendants' evidence did not identify the property with a reasonable degree of certainty. Plaintiff also appeals the judgment on its petition, arguing it is entitled to pre-judgment interest on liquidated damages. We reverse the judgment on the claim for conversion. We remand for the court to determine pre-judgment interest on the liquidated damages.

Plaintiff owns restaurant space located at the St. Peters Civic Center and Golf Course. The original lease was made with Art and Greg Scarato as owners of Dorato's Italian Food. The Scaratos assigned the lease to defendants. Thereafter, defendants assigned the lease to Jim Mulry, Todd Neiting and Joe Vallero (Valleros). In each assignment, all the parties expressly agreed to undertake the obligations of the original lease.

When defendants became sub-lessees, they purchased equipment and inventory

from the Scaratos. Subsequently, defendants sold the equipment and inventory to the Valleros. In order to finance a portion of the sale, the Valleros gave defendants a purchase money note and a security interest in the equipment to secure the debt.

On or about September 6, 1990, the Valleros ceased operating their restaurant. They returned the building keys to plaintiff. At that time, the Valleros and Hills were in default on the rent payments under the lease agreement in the amount of $21,749.80, and were in default on their purchase note held by defendants. Plaintiff sued the original lessees and all of the assignees to collect the unpaid rent. After filing the petition, the Valleros filed for bankruptcy. The case then proceeded against the Scaratos and defendants.[1]

Defendants filed a counterclaim against plaintiff for conversion of certain items of personal property and equipment left in the restaurant by the Valleros. A list of the property was attached to the counterclaim and was valued at $75,000.

The case was tried before a jury in the St. Charles County Circuit Court on February 17, 1998. At the conclusion of defendants' evidence on the counterclaim for conversion, plaintiff moved for a directed verdict. The court denied plaintiff's motion. The jury entered its verdict for plaintiff on the claim of unpaid rent in the amount of $21,749.80. The jury also entered its verdict for defendants on their counterclaim for conversion, awarding them $21,749.80. At the time of the verdicts, plaintiff asked the court to add prejudgment interest to the jury verdict because its rent claim was for liquidated damages. The court denied this request. The court entered its judgment in conformity with the jury verdicts on February 25, 1998. Thereafter, plaintiff filed its motion for judgment notwithstanding the verdict or for new trial. The court denied this motion.

A directed verdict, and a subsequent judgment notwithstanding the verdict, are drastic actions. *Gesellschaft Fur Geratebau v. GFG America Gas Detection, Ltd.,* 967 S.W.2d 144, 146 (Mo.App. E.D. 1998). A directed verdict is proper when reasonable minds could not differ as to the correct disposition of the case. *Id.* Upon review, we view the evidence in the light most favorable to the verdict. *Id.* In reviewing a denial of a judgment notwithstanding the verdict, we must determine whether the plaintiff made a submissible case. *Brown v. Hamilton Insurance Co.,* 956 S.W.2d 417, 419 (Mo.App. E.D.1997).

In its first point on appeal, plaintiff argues that defendants did not offer sufficient evidence to make a submissible case for conversion. In order to make a submissible case of conversion, defendants must present evidence of the following: (1) their possession, right to possession, or ownership which carries with it the right to immediate possession; (2) taking against their will; and (3) damages resulting from the conversion. *Runny Meade Estates v. Datapage Technologies Int'l, Inc.,* 926 S.W.2d 167, 170 (Mo.App. E.D. 1996).

Plaintiff contends that defendants were not the owners of the property at the time of the alleged conversion. The question is whether there is evidence in the record to support finding that defendants had the right to possession or ownership, which includes the right to immediate possession, of the property at the time of the alleged conversion. *Id.* "In the context of secured transactions, a cause of action for conversion will not lie until the party seeking to impose liability has the right to immediate possession of the collateral." *MFA Inc. v. W.L. Pointer,* 869 S.W.2d 109, 111 (Mo.App. W.D.1993).

In order to decide whether defendants had the required right to immediate possession of the property, we must first determine whether they had a valid security

---

1. The Scaratos are not parties in this appeal.

interest in the claimed property. *Id.* A security interest in collateral cannot not be enforced against the debtor or third parties and does not attach unless the following conditions are met:

(a) the collateral is in the possession of the secured party ... or the debtor has signed a security agreement which contains a description of the collateral ...;

(b) value has been given; and

(c) the debtor has rights in the collateral.

Section 400.9–203(1), (2) RSMo Cum.Supp. 1998; *First Tennessee Bank v. Graphic Arts Centre, Inc.,* 859 S.W.2d 858, 863–64 (Mo.App. E.D.1993); *Pointer,* 869 S.W.2d at 111.

Plaintiff does not argue that defendants failed to offer evidence to support finding that a security interest attached under section 400.9–203(1) on some personal property. However, it argues that defendants' evidence was insufficient to support a finding on what property was left at the premises by the Valleros or what was retained by plaintiff.

Section 400.9–110 provides that "[f]or purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Section 400.9–110 RSMo 1994. Here, the parties attached a list of the restaurant equipment and personal property to the security agreement, which constituted the collateral under the agreement. The security agreement contains a list that reasonably describes the collateral. Thus, for our purposes, defendants' evidence supported finding that they had a valid security interest in the listed personal property.

Section 400.9–503 provides, inter alia, with regard to a secured party not in possession, "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral," and judicial proceedings are not required if recovery is peaceable. Section 400.9–503 RSMo 1994. It is undisputed that the Valleros were in default to defendants on the promissory note and there were no provisions in the security agreement which countered the Hill's statutory rights. We find defendants had the right to possession of the property at the time of default.

■ The issue is whether defendants abandoned the property, and thereby conferred title to plaintiff by virtue of the relevant provisions of the lease agreement. The lease agreement was binding on the parties and provides, in part:

37. END OF TERM

At the expiration of this Lease, Tenant shall surrender the Demised premises, and the demised fixtures and equipment in the same condition as it was in upon delivery of possession thereto under this Lease, reasonable wear and tear excepted, and shall deliver all keys and combinations to locks, safes and vaults to Landlord. Before surrendering said premises, Tenant shall remove all its personal property including all trade fixtures, and shall repair any damage caused thereby. Tenant's obligations to perform this provision shall survive the end of the terms of this Lease, said property shall be deemed *abandoned* and shall become the property of Landlord (emphasis added).

■ The burden of showing abandonment is on the party claiming it. *Wilson v. Wheeler Farms, Inc.,* 591 S.W.2d 287, 289 (Mo.App.1979). Abandonment requires intent coupled with an act. *Herron v. Whiteside,* 782 S.W.2d 414, 416 (Mo.App. 1989). Abandonment is a complete defense to a conversion action and precludes recovery. *Id.* at 417. An act is sufficient if it "manifests a conscious purpose and intention of the owner of personal property neither to use nor to retake the property into his possession." *Id.* Intent may be inferred by strong and convincing evidence. *Id.* It may be demonstrated "by conduct clearly inconsistent with any in-

tention to retain and continue the use or ownership of the property." *Id.*

Defendants had the right to possess their collateral [2] when the Valleros defaulted on the promissory note. Thereafter, the Valleros closed the restaurant, surrendered the premises to plaintiff and left the property and equipment on the premises. The lease expressly requires tenants to remove all personal property before surrendering the premises. It further specifies that if this provision is not followed, the property is deemed abandoned and becomes the property of the landlord. Defendants, as tenants, were bound by these terms of the lease. They argue that a letter dated August 8, 1990 from the Valleros' attorney to the City Administrator of Plaintiff constituted sufficient notice to plaintiff that defendant wanted the equipment. The letter has no bearing on any tenant's intentions regarding the property. Defendant, Mr. Hill, testified that he did not know that the Valleros had left the premises and that they were in default under the lease until he received a letter dated October 22, 1990. Although the Hills knew the Valleros were in default on their note, they made no effort to regain possession of the collateral. Their knowledge and conduct does not offer a defense to their obligations described in the lease. Defendants' damages caused by lack of notice from the Valleros may support a claim against them but does not alter plaintiff's rights under the lease.

Defendants abandoned the property under the lease when it was not removed before surrender of the premises. It became the property of plaintiff. We reverse the judgment of the trial court following the jury verdict finding plaintiff liable for conversion. On undisputed facts, the collateral in the Hill–Valleros transaction was abandoned by the tenant on September 6, 1990. As a matter of law, it could not have been converted from defendants on November 27, 1990 as alleged in the counterclaim.

■ In point two, plaintiff argues that the court erred in denying its claim for pre-judgment interest on the liquidated damages. On October 22, 1990, plaintiff made a demand on defendants for unpaid rent in the amount of $21,749.80. At the time of the jury verdict, plaintiff requested that pre-trial interest be added to plaintiff's award on the lease claim. The court denied plaintiff's request.

■ A party is entitled to prejudgment interest when the damages are liquidated or readily ascertainable. *Dierker Associates, D.C., P.C. v. Gillis*, 859 S.W.2d 737, 746 (Mo.App. E.D.1993). Section 408.020 provides:

> [c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made....

Section 408.020 RSMo 1994.

Defendants argue that plaintiff's claim for damages was unliquidated in that the amount is in dispute. Plaintiff made a written demand for the unpaid rent of $21,749.80 by letter dated October 22, 1990. At the time of the demand letter, the petition and the trial, the rent claim of $21,749.80 was the same. Plaintiff included the request for interest in its motion for judgment notwithstanding the verdict or for new trial. The evidence supports a finding that the rent claim was for liquidated damages. The court erred in not awarding plaintiff pre-judgment interest.

We reverse the judgment as to the conversion counterclaim. We remand the case for a determination and award of pre-

---

**2.** We need not address sufficiency of identification issues created when the Valeros discarded items which were collateral and purchased replacement or new items. Nor do we reach the issue of sufficiency of evidence of value at the time of the alleged conversion.

judgment interest on the rent judgment for plaintiff.

WILLIAM H. CRANDALL, Jr., P.J. and MARY K. HOFF, J. concur.