MUTUAL DRUG COMPANY, a Corporation, v. RUBY F. SEWALL et al., Appellants.—No. 38918.—182 S. W. (2d) 575.

Division One, September 5, 1944.

Rehearing Denied, October 9, 1944.

*Langworthy, Matz & Linde* for Ruby F. Sewall; *Howard W. Grant* for William F. Fisher et al., appellants.

*Thompson, Hine & Flory, Dwight M. Smith* and *Harvey E. Hartz* for respondent.

378

██ BRADLEY, C.—██ Action for declaratory judgment, under Secs. 1126 et seq., R. S. 1939, Mo. R. S. A., Secs. 1126 et seq., to determine plaintiff's liability under what was termed by the draftsman a "ninety-nine year sublease", executed November 14, 1919. Relief by declaratory judgment is sui generis, and while not either strictly legal or equitable, yet its historical affinity is equitable. Connell et al. v. Jersey Realty & Investment Co., 352 Mo. 1122, 180 S. W. (2d) 49, 54, and cases there cited. The present cause was tried as one in equity. Plaintiff claimed that, under the facts obtaining and absent default in the terms of the so-called sublease at the time of any future assignment, plaintiff could assign all its interest therein and thereafter be free from further liability thereunder. The trial court agreed with plaintiff's contention, entered such declaratory judgment, and defendants appealed. The amount involved gives the supreme court jurisdiction of the appeal.

November 14, 1919, Fred H. Fitch, the fee owner, executed a lease, to run 99 years from November 1, 1919, to Quapaw Realty Company, a Missouri corporation, upon lots 6 and 7, Union Station Addition, Kansas City. On the same day, November 14, 1919, and immediately after the execution of the Fitch lease, Quapaw Realty Company, by a so-called "ninety-nine year sublease", leased said lots to plaintiff, an Ohio corporation, for the term of 99 years from November 1, 1919. The so-called sublease contained practically the same provisions as the original lease, except as to amount of the rental and the cost of the building to be erected on the property by the original lessee.

The original lease required the lessee to pay an annual rental of $3500, in equal quarterly installments in advance, on the first day of February, May, August and November, to erect, at its own expense, on the leased premises, by May 1, 1921, a building costing not less than $25,000, free and clear of all claims, to keep the building in good repair and adequately insured, and to pay all taxes. The original lease recites that the lessee, concurrently with the execution thereof, paid to the lessor and that the lessor accepted $3500 "as the rental in full up to and including the 30th of April, 1921."

There was a provision in the original lease that the lessee, prior to the erection of the building, could not assign the lease except with the lessor's written consent, but he could mortgage, without such consent, to raise money to erect the building. After the erection of the building the original lease authorized the lessee to "sell, assign or encumber this lease and its leasehold estate hereby created, provided all of lessee's covenants and obligations hereunder shall have been fully performed, met and complied with and, provided that there shall be at the time of such an assignment no arrears of rent unpaid to that date, nor any taxes, judgments, assessments, liens, penalties or claims for damages against lessee." The original lease further provided that "any such assignment must be in writing, signed, acknowledged

and recorded in the office of the recorder of deeds of Jackson County, Missouri, at Kansas City, in the same manner as required by law for conveyances of real property and that by the terms thereof the assignee shall expressly accept, assume and agree to perform all of the covenants and obligations of lessee hereunder. And it shall be the duty of lessee promptly to deliver to lessor a certified copy of any· such assignment.''

And the original lease further provided.: ''Lessee covenants and agrees that it will not make any assignment of this lease except in the manner and upon the conditions above set forth, and it is agreed and notice is hereby given that any assignment ▉▉▉ or conveyance of, and any mortgage or deed of trust upon lesseee's interest and leasehold estate or any improvements on the demised premises not in strict conformity with the foregoing provisions shall be absolutely null and void.''

Plaintiff contends that the so-called sublease is not a sublease, but is, in effect, an assignment of the original lease. We rule, infra, that it is such an assignment, hence we so term it for the most part when making reference to it herein. The assignment fixed the rental at $5,000 per year for the first 5 years and $6,000 per year for the remaining 94 years. The rent was made payable quarterly in advance on the first day of February, May, August and November. Plaintiff was required by the assignment to erect on the property a building, costing not less than $50,000, by November 1, 1920, six months earlier than the building required to be erected by the original lease. As stated, supra, the terms of the assignment contained about the same provisions as the original lease, except as to rental and the building to be erected, hence the requirements, in the assignment, as to repairs, insurance, taxes, encumbering, selling, assigning, etc., are the same, in effect, as in the original lease.

Plaintiff went into the immediate possession under the assignment (so-called sublease) and erected on the property a $115,000 building, and remained in possession until some time shortly before this cause was commenced. At the time of the trial, the property was occupied by plaintiff's subtenant, but there were no rent payments in default and no breach of the terms of the assignment. Defendants, 15 individuals, own the fee in the property through mesne conveyances from the original lessor Fitch and by inheritance from Fitch, now deceased.

July 15, 1925, Fitch and Quapaw Realty Company, original lessor and lessee, entered into a written agreement whereby they sought to terminate, as of that date, the original lease. The agreement recited that possession of the premises ''with all improvements thereon, now held by second party (Quapaw) through its subtenant'' (plaintiff) was delivered to Fitch. This agreement further recited that it was intended thereby ''to terminate said Quapaw lease (original lease) and to vest in first party (Fitch) all the rights of second party (Quapaw)

and its interest in said Mutual Drug Company sublease, so that first party (Fitch) shall forthwith become and enjoy all the rights of the lessor (Quapaw) under such sublease.''

The articles of agreement for the incorporation of Quapaw Realty Company were signed November 12, 1919, and the charter was issued November 13, 1919. The capital stock was $3,000, which consisted of $100 cash and the Fitch lease, in prospect, valued at $2900. The Quapaw charter was forfeited January 1, 1927, ''for failure to file the annual registration report for 1926.''

The trial court found that the so-called sublease (the assignment) ''conveyed and transferred the whole estate provided for in said original lease, for the entire period (and it did), leaving no reversion in the original lessee, and that said . . . instrument was, in fact and in law, an assignment of said original Fitch lease, and not a sublease, and that there was no express consent in writing by the lessor, Fitch, to said assignment of said lease.'' The court further found that ''Quapaw Realty Company was, in fact, a mere straw lessee, and that said lessor Fitch knew that said Quapaw Realty Company had no financial responsibility beyond the sum of $100 paid, at the time of incorporation, and that it was not intended that said Quapaw Realty Company, after making the assignment of its lease, should be further liable'', and that ''it was not the intention of the lessor Fitch that there should be any continuing liability upon the plaintiff Mutual Drug Company for payment of rent, in the event it should sell and assign said lease, after having complied with the terms thereof in the erection of the building upon said premises, and fully paying the costs thereof, and provided that the form of sale and assignment conformed in all respects to the requirements of said lease.''

The court further found that the assignment to plaintiff created between plaintiff and Fitch a *privity of estate* under which plaintiff became liable to Fitch and his assigns (defendants) on the covenants in the original lease ''which run with the land, including the covenant to pay rent, only so long as plaintiff continued to hold the estate; . . . that if there had been any further liability the act and conduct of the lessor Fitch and the lessee Quapaw Realty Company, in rescinding, terminating and surrendering up said (original) lease and mutually releasing themselves from liability thereunder, without the knowledge or consent of plaintiff, would have and did likewise release the plaintiff as assignee; . . . that said defendants have only the rights of assignees with notice and have no better rights than had Fitch.''

The court further found: ''That plaintiff has the absolute right to sell and assign any rights or interest it may have, if any, under said so-called sublease, in the event it can find any person who will purchase and take assignment of such rights or interests, if any, upon full compliance by plaintiff and such purchaser, with the terms and

provisions of said so-called sublease relating to the circumstances, form and manner in which such assignment and sale shall be made; and upon making such sale and assignment, and vacating said premises, plaintiff will then and henceforth and forever be released and discharged of any and all obligations under said so-called sublease, or said original lease, to pay rent for said premises to any person, persons or corporation, whatsoever, including the defendants, and that plaintiff will then and henceforth be fully acquitted and discharged from any and all obligations thereunder.''

■ ''The difference between an assignment of a lessee's *term* and an underletting is that an assignment is a transfer of the lessee's *whole interest* in the leased premises, whilst an underlease leaves a portion of the lessee's estate still in him . . . If the whole of the unexpired leasehold estate is conveyed, then the party to whom it is conveyed becomes a privy in estate, whatever the form of the instrument, whether an assignment or a lease. . . . 'if the lessee parts with his whole term or interest as lessee, *or makes a lease for a period exceeding his whole term,* it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument *as an assignment,* so far as the original lessor is concerned, *will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for nonpayment, nor by its assuming, by the use of the word demise* or otherwise, the character of a sublease; and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent.' '' (Italics in report.) St. Joseph & St. Louis R. Co. v. St. Louis, I. M. & S. Ry. Co., 135 Mo. 173, l. c. 189-190, 36 S. W. 602, 33 L. R. A. 607. See also, Weigle v. Rogers, 202 Mo. App. 520, 213 S. W. 501; Bibler v. Iuchs, 220 Mo. App. 736, 275 S. W. 779; Entroth Shoe Co. v. Johnson (Ky. App.), 85 S. W. (2d) 686; 35 C. J., p. 988, sec. 80; 16 R. C. L., p. 832, sec. 329; 3 Thompson on Real Property (Per. Ed.), sec. 1393; New Amsterdam Cas. Co. v. National Union Fire Ins. Co., 266 N. Y. 254, 194 N. E. 745, 99 A. L. R. 216.

■ The assignment conveyed the whole of the lessee's term, that is, conveyed all of the leasehold estate; left no reversionary interest in the original leasehold estate in the original lessee. Hence, under the authorities, supra, the so-called sublease was an assignment and not a sublease, as the trial court found. And, as ruled in St. Joseph & St. Louis R. Co. v. St. Louis, I. M. &. S. Ry. Co., supra, the fact that a different rental was reserved did not prevent it from being an assignment. Also, it appears that the assignment was without the written consent of Fitch, and that plaintiff never agreed to pay the rentals agreed to be paid by Quapaw, its assignor, but did agree to pay Quapaw a different and greater rental than Quapaw was to pay Fitch. The original lease *required* that if Quapaw assigned, that the instru-

ment of assignment should provide that the assignee "assume and agree to perform all of the covenants and obligations of" Quapaw to the original lessor Fitch. One of these obligations was to pay rent *to* the original lessor. The assignment, that is, the so-called sublease, from Quapaw to plaintiff did not specifically provide for payment of rent to Fitch, but the assignment created between the original lessor Fitch and plaintiff privity of estate, but not privity of contract to pay rent to Fitch, and plaintiff, the assignee of the original lease, unless bound by reason of the agreement of July 15, 1925, was only liable for rent while it remained in possession itself or by a subtenant. Dean et al. v. Lee, 227 Mo. App. 206, 52 S. W. (2d) 426; Bauer v. White et al., 225 Mo. App. 270, 29 S. W. (2d) 176; St. Joseph & St. Louis R. Co. v. St. Louis, I. M. & S. Ry. Co., supra; Crow v. Kaupp et al. (Mo. Sup.), 50 S. W. (2d) 995; Treff v. Gulko, 214 Cal. 591, 7 Pac. (2d) 697; George Realty Co. v. Gulf Refining Co., 275 Mich. 442, 266 N. W. 411.

 Defendants, in the brief, say that "there is respectable authority . . . holding that an instrument such as this sublease (the assignment) if the parties thereto so intended, is in fact a sublease." But, say defendants: "Whether the ninety-nine year sublease (assignment) be a lease or an assignment, privity of contract was thereby created between the plaintiff and Quapaw Realty Company, and the defendants, as assignees (by the agreement of July 15, 1925) of Quapaw Realty Company have succeeded to those contract rights; and no assignment (of the so-called sublease) by the plaintiff will free it from liability upon its covenants to pay rent and taxes during the entire term of the lease and to perform the other terms thereof." In support of such contention, these authorities are cited: McDonald v. May, 96 Mo. App. 236, 69 S. W. 1059; Stewart v. Long Island R. Co., 102 N. Y. 601, 8 N. E. 200; Potts-Thompson Liquor Co. v. Potts et al., 135 Ga. 451, 69 S. E. 734; Davidson v. Minnesota Loan Co., 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418; 3 Thompson on Real Property (Per. Ed.); sec. 1388; 1 Tiffany's Real Property (3rd Ed.), sec. 123; Metropolitan Life Ins. Co. v. Hellinger, 272 N. Y. 24, 3 N. E. (2d) 621. See also, 36 C. J., p. 379, sec. 1246; 18 A. L. R. 963, note.

The assignment, the so-called sublease, to plaintiff, as we have seen, created only privity of estate between plaintiff and the original lessor Fitch and not privity of contract, but privity of estate and privity of contract were, by the assignment, created between Quapaw and plaintiff. And by the agreement of July 15, 1925, there was vested in Fitch, original lessor, "all the rights" of Quapaw in the assignment, so that Fitch should "enjoy all the rights of the lessor (Quapaw) under such" assignment of July 15, 1925. One of these rights was the agreement of plaintiff to pay to Quapaw rent, taxes, etc., for the full term of 99 years. But plaintiff says that the original lease was

*terminated* by the agreement of July 15, 1925, and that "on such termination, without plaintiff's consent supported by a consideration, all contractual obligations, if any, of plaintiff under its assignment (the so called sublease) were likewise terminated."

Paragraph XII of the original lease, in part, provides: "All buildings and improvements including attachments and fixtures which may at any time during said term be placed upon the leased premises, shall, upon expiration or lawful termination of this lease by forfeiture or otherwise, without compensation therefor to lessee other than the considerations hereof, be and become the property of lessor, and lessee covenants and agrees thereupon to yield possession of same and the demised premises to lessor promptly in good condition and repair."

In the brief plaintiff says of the above provision: "It appears quite clear from the provisions of the above paragraph of the original lease that it was contemplated between the original lessor and the original lessee, that they might desire to terminate said lease for reasons other than by forfeiture, and they provided for just that thing in the above paragraph. In other words, they contracted in advance for doing the very thing which they did on July 15, 1925, surrender up, rescind and terminate the original lease by mutual agreement, the lessee surrendering up possession of the property and the lessor releasing the lessee from all obligations under the lease."

But the original lease was *assigned* by Quapaw and this assignment was prior to the agreement of July 15, 1925. The estate assigned to plaintiff was the whole of the leasehold estate vested in Quapaw by the original lease, and certainly plaintiff was not *divested* of that estate by the agreement of July 15, 1925, to which plaintiff was not a party. As between Fitch and Quapaw there was no leasehold estate to be *terminated* on July 15, 1925, because the *whole* of the leasehold estate vested in Quapaw by the original lease was then vested in plaintiff by the assignment, and Quapaw had no estate in the property to be divested of. Plaintiff cannot consistently urge on the one hand that the so-called sublease was an assignment of the entire leasehold estate for the full term of 99 years, and not a sublease, and then on the other hand urge that the agreement of July 15, 1925, terminated this same leasehold estate.

Neither of the cases or texts cited by defendants on their claim that "no assignment ▆▆▆ (of the so-called sublease) by the plaintiff will free it from liability upon its covenants to pay rent", etc., for the entire term, is exactly in point. The cited cases and texts deal with a variety of obligations arising on assignment of leases and subleases, but no case is cited and we find none where, as here, the original lessor and lessee, subsequent to the assignment by the lessee of the whole of the leasehold estate, undertook to terminate the lease as between them, the original lessor and lessee, and at the same time

transfer to the original lessor all of the original lessee's rights to collect rent, etc., from the assignee of original lease.

While, as between Fitch and Quapaw, there was no leasehold estate to be terminated by the agreement of July 15, 1925, yet Quapaw had certain rights under the assignment, that is, the so-called sublease, and our attention is directed to no authority and we find none which runs counter to the notion that the agreement of July 15, 1925, clothed Fitch and his assigns (defendants) with all the rights of Quapaw under· the so-called sublease, and there is no authority for the contention of plaintiff that "all contractual obligations" of plaintiff under the so-called sublease were terminated and destroyed because of the agreement of July 15, 1925, without plaintiff's consent "supported by a consideration."

▇ We have proceeded so far somewhat on the assumption that the assignment (the so-called sublease) was not void for lack of the original lessor's written consent thereto, and we now specifically rule that question. The assignment (the so-called sublease) was prior to the erection of any building, and according to the letter of the original lease, such assignment was void because Fitch, original lessor, did not, in writing, consent thereto. The assignment to plaintiff, as appears, was on November 14, 1919, same ·day original lease was executed, and immediately thereafter, that is, contemporaneously therewith, as much so as two documents could be so executed. Plaintiff went into immediate possession and fully performed for some 20 odd years under the assignment before claiming that it was void for lack of Fitch's written consent to the assignment and before claiming plaintiff was not bound to continue to perform if it could by chance shift the burden to another, even to an irresponsible. Since the original lease and the assignment were executed contemporaneously, and in similar phrase, it would be unreasonable to say that Fitch did not know of the assignment and if he did he waived the written consent requirement. Sutorius et al. v. Mayor et al., 350 Mo. 1235, 170 S. W. (2d) 287, l. c. 396, and cases there cited. In the situation, absent consent of defendants, plaintiff cannot escape the obligations of the assignment by Quapaw to it by shifting to another. See 4 Am. Jur., Assignments, secs. 5 and 103; 6 C. J. S., Assignments, sec. 2, pp. 1049-1051.

▇ The judgment should be reversed and the cause remanded with directions to enter judgment for defendants in conformity with this opinion, Connell et al. v. Jersey Realty & Investment Co., 352 Mo. 1122, 180 S. W. (2d) 49, l. c. 54, and authorities there cited. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.