Michael J. and Sunday SIRAGUSA,
Respondents,

v.

Chang Su PARK, Appellant.

No. WD 50354.

Missouri Court of Appeals,
Western District.

Jan. 23, 1996.

William P. Whitaker, Kansas City, for appellant.

Jay W. Jensen, Ennis, Browne & Jensen, P.C., Kansas City, for respondents.

Before ULRICH, P.J., and SPINDEN and ELLIS, JJ.

ELLIS, Judge.

This case arises out of a five-year lease entered into on June 23, 1987 by Michael and Sunday Siragusa as lessors, and Chang Su Park as lessee. Under the terms of the lease, Park leased property located at 5402 Winner Road in Kansas City for use as a coin laundry for a total rental sum of $47,-400.00, payable in monthly installments that increased from year to year. The lease specifically provided that Park was unable to assign, transfer, encumber or sublet the premises without the Siragusas' written consent. After the lease was entered into, Park entered into possession of the premises, paid the rent when due, and had the enjoyment of the premises. However, on June 6, 1989, the Siragusas consented to sublet the premises to James L. Thomas. The Siragusas, Thomas and Park executed a document entitled "Consent to Subletting and Option," reflecting the agreement to sublet. Under the consent agreement, Park agreed to remain bound to pay the rents reserved and to perform each and every provision and condition required of him under the original lease. However, the consent agreement recited that this was in consideration of, and as an inducement to, lessors to consent to the proposed subletting. Thomas, under the consent agreement undertook additional obligations over and above those contained in the original lease by agreeing to pay an additional security deposit, maintaining fire insurance in excess of that contained in the original agreement, assuming the obligation for payment of all property taxes, which was not part of the original lease, and certain other alterations or changes to the original lease. After this agreement, Thomas paid the rent directly to the Siragusas, and there is no dispute that the rent continued to be paid so long as Thomas was in possession.

From the record, it appears Thomas vacated the building at some point but continued to pay rent and ultimately either he, or perhaps his banker, put Glenn Wallace into possession. Upon discovery, or notification by Thomas, (it is unclear which) the Siragusas consented to Wallace's possession and had him affix his signature to the lease and the consent agreement on December 28, 1989. There was no additional written agreement executed. Wallace then began paying rent to the Siragusas.

Some months later, Wallace apparently began having difficulty making the rent payments, and may have even vacated the premises. Again, the details are not entirely clear, but it appears Wallace made arrangements for Patsy J. Watters to lease the

property, to which the Siragusas consented, and on July 7, 1990, they had Watters sign the original lease and the consent agreement. As was the case with Wallace, there was no additional written agreement.

By October, 1990, Watters notified the Siragusas that she could not make it and was vacating the premises, which she did. The Siragusas then brought suit in Jackson County Circuit Court against Park, Thomas, Wallace and Watters, seeking damages equal to the amount of unpaid rental under the terms of the original lease. Thomas, Wallace and Watters were subsequently dismissed without prejudice from the action based on lack of service. Thereafter, the case was tried to the court sitting without a jury and at the conclusion of trial, the court entered judgment, without the benefit of findings of fact or conclusions of law, in favor of the Siragusas and against Park in the amount $20,-617.00. Park then filed this timely appeal.

 On appeal of this court tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When the trial court does not make any specific findings of facts, the fact issues are found in accordance with result reached and the judgment must be affirmed under any reasonable theory supported by the evidence. *MFA Inc. v. Pointer*, 869 S.W.2d 109, 111 (Mo.App. 1993). Moreover, we do not weigh the evidence, and we must give deference to the trial court's superior ability to judge the credibility of the witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991).

The original lease in this case provided that in the event of a default, the Siragusas were required to give Park written notice of the default and ten (10) days in which to cure same. The parties concede that Park was never given such a notice. Therefore, Park argues that this failure, conjoined with the Siragusas re-letting of the premises first to Wallace, and later to Watters, constituted an election on their part to terminate the lease, and resume possession in their own right.

*See MRI Northwest Rentals Invs. I, Inc. v. Schnucks–Twenty–Five, Inc.*, 807 S.W.2d 531, 534 (Mo.App.1991). The Siragusas counter by asserting that the consent agreement was an assignment, not a sub-lease, and therefore the lease provision requiring notice to Park of a default was inapplicable.

 The determination as to whether the consent agreement is a sub-lease or an assignment is not dependent on how the document is denominated. *St. Joseph & St. Louis R. Co. v. St. Louis I.M. & S.R. Co.*, 135 Mo. 173, 189–90, 36 S.W. 602, 605 (Mo.1896).

> The test in Missouri as to whether a sublease or an assignment has been given is that in a sublease the sublessor retains some right or interest in the premises leased while in an assignment he parts with all his interest of whatever kind or character.

*Michelson Realty Co. v. Curtis, Bamburg & Crossen*, 851 S.W.2d 7, 9 (Mo.App.1993). The difference between an assignment and a sublease is significant. In the former, the lessee parts with his whole term or interest as lessee, *Mutual Drug Co. v. Sewall*, 353 Mo. 375, 182 S.W.2d 575, 578 (1944), and retains no reversionary interest in the original lease. *Employees Consumer Org., Inc. v. Gorman's, Inc.*, 395 S.W.2d 162, 165 (Mo. 1965). On the other hand, if there remains a reversionary interest in the estate conveyed, however small, the arrangement is a sublease. *Id.* If the transaction is an assignment, "the assignee of a lease succeeds to all the interest of the lessee and to the benefit of all the covenants and agreements of the lessor which are annexed to and run with the leasehold estate, whereas the sublessee does not acquire any right to enforce the covenants or agreements of the lessor contained in the original lease. The sublessee's rights depend on the covenants or agreements in his sublease." *Id.* at 166. Furthermore, the assignee "is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent." *Mutual Drug Co. v. Sewall*, 182 S.W.2d at 578.

 In the case at bar, the consent agreement, while denominated in terms of a

sublease, clearly constituted a transfer of Park's entire interest in the leased premises without retention of any reversionary interest on his part. The consent agreement was for the balance of the lease term and included a provision for an additional option in favor of Thomas upon a renegotiated rent. Park retained no right of reentry into or onto the premises for breach of any of the covenants of the consent agreement. Moreover, the consent agreement imposed additional and increased obligations on Thomas over and above those contained in the lease itself. Finally, the lease payments were made directly from Thomas to the original lessor, the Siragusas. The consent agreement called for no payment to be made to Park. Thus, Park conveyed the entire term and parted with all reversionary interest in the property, and as a result, the consent agreement constituted an assignment by Park to Thomas, with the consent of the Siragusas. Moreover, as a complete assignment, Park was no longer entitled to the benefit of the default notice provision contained in the original lease, but rather, Thomas, as assignee, was the one to whom such notice was required.

■ Park further contends that even if the consent agreement was an assignment, he was still entitled to notice of the default, and/or the re-letting first to Wallace and then to Watters. Park is, in effect, still contending that he was entitled to written notice. While he may not have been given written notice of these events, there is evidence in the record that Michael Siragusa contacted him in person and by telephone about the default and that Park merely replied that he had already lost enough money and would not pay any more rent. Although Park denied having had these contacts, we infer that the trial court believed it because it is consistent with the judgment. *MFA Inc. v. Pointer*, 869 S.W.2d at 111; *Brawley v. McNary*, 811 S.W.2d at 365. In addition, it should be noted that the Siragusas filed suit against Park for accrued rent and other relief in the Associate Circuit Court of Jackson County on June 7, 1991. Park was served, filed pleadings and ultimately had the benefit of a judgment finding he had a security interest in certain personal property situated on the premises. The claim for accrued rents was apparently dismissed without prejudice because the Siragusas failed to appear. In the instant case, the trial court took judicial notice of the prior proceedings. Thus, it is clear that Park had notice of the default.

All of Park's other points are premised on the notion that the lease provisions were applicable to him and he was entitled to the benefit thereof. He contends the lease was terminated because the Siragusas relet the premises without giving him the ten (10) day notice previously discussed. He also asserts that the Siragusas breached the lease by not giving such notice. And finally, he argues that the Siragusas were acting as his agent, under certain provisions in the lease, in re-letting the premises and by not notifying him of the default, they breached a fiduciary duty to him. However, as discussed *supra*, by virtue of Park's assignment of the lease, Thomas, Park's assignee, succeeded to all of Park's interests under the lease, including "the benefit of all the covenants and agreements of the lessor which are annexed to and run with the leasehold estate." *Employees Consumer Org., Inc. v. Gorman's, Inc.*, 395 S.W.2d at 166. Thus, the covenants and agreements of the Siragusas contained in the original lease were no longer for Park's benefit, but rather inured to Thomas. Nevertheless, for the reasons hereafter set forth, Park was still obligated for payment of the rent due on the lease.

■ Generally, if a lease contains an express covenant to pay rent, the lessee may not escape liability on the lease merely by assigning it to another. *Jenkins v. John Taylor Dry Goods Co.*, 352 Mo. 660, 667–68, 179 S.W.2d 54, 58 (1944). A lease has a dual nature: it is both a contract and a conveyance. *Newfeld v. Chemical Dynamics, Inc.*, 784 S.W.2d 240, 242 (Mo.App.1989). As such, between the lessor and the lessee, it creates a contractual relationship, privity of contract, as well as being a conveyance of an estate in land, creating privity of estate. *Id.* Upon an assignment by the lessee, the privity of estate between the lessee and lessor is destroyed, and a new privity of estate is created between the assignee and the lessor. *Id.* However, "[p]rivity of contract, as contrasted

with the more lowly privity of estate, exists and the lessee having covenanted [to pay rent] is bound even though he assign and even though the landlord receive and accept rent from the assignee." *Jenkins*, 352 Mo. at 668, 179 S.W.2d at 58.

In the case at bar, the Siragusas petition sought recovery under the terms of the lease and the consent agreement. The Siragusas and Park were still in privity of contract under the original lease, notwithstanding Park's assignment to Thomas. *Id.*; *Newfeld v. Chemical Dynamics, Inc.*, 784 S.W.2d at 242. Park was no longer entitled to any of the benefits of the lease, but he was still obligated under his express covenant for payment of the rent. As such, the trial court did not err in entering judgment against Park for the amount of the unpaid rent due under the terms of the lease.

The judgment of the trial court is affirmed.

All concur.